IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.  Criminal No. 3:08cr374

CAMILLA WHITAKER,

Petitioner.

## MEMORANDUM OPINION

Camilla Whitaker, a federal inmate proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence ("§ 2255 Motion"). (Docket No. 33.) The Government filed its response. Whitaker has replied. The matter is ripe for disposition.

### I. PROCEDURAL HISTORY

Whitaker "knowingly and voluntarily agree[d] that each of the [following] facts [were] true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt." (Statement of Facts 5.)

> Beginning on or before September 21, 2006, and continuing up through and including July 8, 2008, the defendant, CAMILLA WHITAKER, did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with outers, known and unknown, to knowingly, intentionally, and unlawfully distribute and possess with the intent to distribute a mixture and substance containing detectable amounts of OxyContin, a Schedule II controlled substance.
> Beginning [on] or before September 21, 2006, and continuing up through and including July 8, 2008, express mail packages with various fictitious return

addresses and company names were mailed from Richmond, Virginia primarily to people located outside of the Commonwealth of Virginia.

An investigation into these mailings was initiated due to the suspicious nature of the packages being sent and received, including the use of return addresses that were either nonexistent, or not located in the zip code that the mailer had written on the mail piece. It was also determined that the names of the companies that were used by the mailer were not registered businesses in the Commonwealth of Virginia.

The investigation revealed that a female, subsequently identified by video, fingerprints, and witness identification, as CAMILLA WHITAKER, had been receiving packages containing cash via the United States mail. These packages were arriving at one of two post office boxes that [Whitaker] had rented through the use of nominees. These post office boxes were also in the names of fictitious companies, later identified with [Whitaker] via forensic analysis. [Whitaker] was observed removing mail from both post office boxes.

Federal search warrants were obtained and executed for both the incoming and outgoing packages. It was determined that the incoming packages always contained United States currency, while the outgoing packages contained 40 mg OxyContin pills in various quantities. [Whitaker]'s fingerprints were recovered from a package that contained OxyContin that had been sent to a customer via the United States mail.

The investigation also revealed that [Whitaker] had been mailing OxyContin pills for a period of at least two years, from September, 2006 up to July, 2008. It was determined that WHITAKER'S customers were located throughout the United States, including Texas, Illinois, Washington, New Hampshire, Colorado, New Jersey, Kansas, California, Arizona, Florida, Rhode Island, to name just a few.

At least five cooperating sources (hereafter, CSs) were interviewed and/or agreed to speak with investigators. These CSs made statements against their penal interests in which they advised that they had been paying cash for OxyContin pills which they had acquired via internet addresses that were subsequently identified through forensic evidence as belonging to [Whitaker].

One CS advised that he/she had been purchasing from fifty to three hundred 40mg OxyContin pills approximately every two weeks for a two year period of time between July, 2006 and July, 2008. This customer had purchased a total of approximately 14,000 pills from [Whitaker]. An independent investigation conducted by law enforcement corroborated this CSs information.

A second CS advised that during a two year time period from approximately June 2006, through June 2008, he/she had placed between 50 and 100 orders for OxyContin pills via the internet using addresses later identified as belonging to [Whitaker]. Each of these orders ranged in size from as few as five to as many as one hundred 40 mg OxyContin pills. This CS estimated that he/she had purchased approximately 1,875 pills from [Whitaker] during this time period. This information was also corroborated through independent investigation.

A third source of information indicated that he/she had been a regular customer of [Whitaker's] from approximately October, 2006 through approximately June, 2008. This individual had placed as many as six orders per month with [Whitaker] for 40 mg OxyContin pills. Fifty pills were recovered from one order, and 47 pills were recovered from another order that had been placed with [Whitaker] and intercepted by law enforcement. Independent investigation determined that at least 37 additional mailings had been made by [Whitaker] or her co-conspirators to this customer.

Additional CSs provided similar information that indicated that they had been purchasing OxyContin from [Whitaker] on a regular basis during the time period set forth in the indictment. All of the CSs advised that they received 40 mg OxyContin pills, and that they had paid $20.00 per pill, plus a $22.00 shipping and handling fee. This information was corroborated through independent investigation.

In addition, a controlled purchase of fifty 40 mg OxyContin pills was made in June, 2008 by law enforcement utilizing one of the CSs who had purchased OxyContin via the internet from an address identified as belonging to [Whitaker]. [Whitaker]'s fingerprints were later recovered from the inside of the envelope that had been used to mail the OxyContin to law enforcement officers.

> The parties stipulate and agree that had the matter gone to trial, the United States could have proven beyond a reasonable doubt that during the time period set forth in the indictment, [Whitaker] did conspire with others, known and unknown, to distribute and she did distribute and cause to be distributed at least 25,000 40 mg OxyContin pills.
> On or about July 14, 2008, the exact date being unknown, after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, [Whitaker] did knowingly and unlawfully possess firearms and ammunition, to wit: a Taurus .38 special revolver, serial number 986127; a Taurus .357 magnum revolver with an obliterated serial number, and assorted ammunition.

(Statement of Facts ¶¶ 1-14 (paragraph numbers omitted).)

A grand jury returned an indictment charging Whitaker with the following three counts: (1) conspiracy to distribute OxyContin; (2) distribution of OxyContin and aiding and abetting in the distribution of OxyContin; and (3) possession of a firearm/ammunition by a convicted felon. (Indictment 1-2.) Pursuant to the Plea Agreement, Whitaker pled guilty to Counts One and Three of the Indictment and the Government dismissed Count Two. (Plea Agreement ¶ 1, 11.) The Court sentenced Whitaker to 180 months of imprisonment. Whitaker did not appeal. Rather, Whitaker filed the § 2255 Motion making the following claims:[1]

---

[1] The Court has re-ordered and re-numbered Whitaker's claims in order to address them more clearly. Claim One (a) corresponds to Whitaker's "Ground One" and Claim One (b) corresponds to Whitaker's "Ground Four." (§ 2255 Mot. 5-6.) Claim Two (a) corresponds to Whitaker's "Ground Two" and Claim

4

| | |
|---|---|
| Claim One | (a) Counsel ineffectively failed to move to suppress evidence that Whitaker possessed firearms. |
| | (b) Counsel never presented evidence supporting Whitaker's statement that others had access to the shed where the firearms were found. |
| Claim Two | (a) Counsel deficiently advised Whitaker to plead guilty to 25,000 pills "when there were no supporting evidence to support this amount." (§ 2255 Mot. 5.) |
| | (b) Counsel failed to object when the amount of pills represented in the Plea Agreement and Statement of Facts was higher than the amount discussed during plea negotiations. |
| Claim Three | Counsel refused to withdraw Whitaker's guilty plea as requested. |

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch

---

Two (b) corresponds to Whitaker's "Ground Three." (Id.) Claim Three is found on page two of Whitaker's Memorandum in Support of her § 2255 Motion. (Mem. Supp. § 2255 Mot. 2.)

v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Whitaker's assertion that she would have pled not guilty but for counsel's alleged error (Mem. Supp. § 2255 Mot. 4) is not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474 U.S. at 59-60). The Court looks to

6

all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. Id. at 369-70.

Of course, in conducting the foregoing inquiry, the representations of the defendant, her lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted). Accordingly, the United States Court of Appeals for the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. No circumstances exist here that would lead the

Court to consider Whitaker's prior sworn statements anything but conclusively established. See Lemaster, 403 F.3d at 221.

A. **Claim One**

In Claim One (a), Whitaker claims that counsel never moved to suppress firearms found in her storage shed. Whitaker asserts that counsel's lack of action violated both her Sixth Amendment[2] right to effective assistance of counsel and her Fifth Amendment[3] due process rights. In Claim One (b), Whitaker argues that, had counsel presented evidence that "[o]thers had access to this storage unit" (Mem. Supp. § 2255 Mot. 2), the Government could not have proven Count Three. This failure, argues Whitaker, violated her Sixth Amendment right to effective assistance of counsel. Counsel, for his part, states, "T[wo] guns were found in a storage unit [Whitaker] had the keys to. Arguably, [Whitaker] could have beaten [Count Three] at trial, however, she could not have beaten the drug charges and, had she gone to tr[ia]l she would have been subject to [multiple sentencing enhancements]." (Gov't's Resp. Ex. 1 (Collins Aff.).)

---

[2] "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[3] "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

8

### 1. Fifth Amendment Claim

In Claim One (a), Whitaker asserts that "[counsel] violated my 5th Amendment by not objecting to the firearms/ammunition." (Mem. Supp. § 2255 Mot. 2.) Whitaker, however, fails to explain how the firearms/ammunition implicated, much less violated her rights under the Fifth Amendment. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Because Whitaker's Fifth Amendment rights have not been implicated, much less violated, any Fifth Amendment component of Claim One (a) will be dismissed. See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970) ("It is within the discretion of the district judge to deny without a hearing Section 2255 motions which state only legal conclusions with no supporting factual allegations." (internal quotation marks omitted)).

### 2. Sixth Amendment Claims

Given her prior representations (see Statement of Facts ¶¶ 14-16), Whitaker cannot now claim that she is innocent of Count Three.[4] At best, the record reflects Whitaker's counsel believed that, despite Whitaker's guilt, the possibility existed for a Pyrrhic victory on Count Three. Counsel, however, recognized the inevitability of Whitaker's conviction on Count One. Because no additional prison time resulted from Whitaker's

---

[4] Whitaker does not advance any coherent theory for suppressing the seizure of the firearms and ammunition.

9

conviction on Count Three,[5] counsel prudently advised Whitaker to accept a conviction on this count. Moreover, had she gone to trial, Whitaker would have lost the benefit of a two-level reduction in offense level for acceptance of responsibility as well as the Government's promise to dismiss Count Two. Absent cooperation with the Government, a conviction on Count One would increase Whitaker's guideline range from 151-188 months of imprisonment to 188-235 months of imprisonment. U.S. Sentencing Guidelines Manual ("USSG") § 5A (2009). Given these facts, counsel's strategy to concede guilt on Count Three falls within "the wide range of reasonable professional assistance." Burch, 273 F.3d at 588 (internal quotation marks omitted). Whitaker fails, therefore, to demonstrate deficiency or prejudice in counsel's strategy. Hence, Claims One (a) and (b) will be dismissed.

## B. Claim Two

### 1. Claim Two (a)

In Claim Two (a), Whitaker argues that counsel erroneously urged her to accept the Plea Agreement despite the lack of evidence that she distributed at least 25,000 pills. However, on this record, the Government had overwhelming evidence of Whitaker's guilt as well as the amount of OxyContin distributed.

---

[5] Whitaker is currently serving 120 months of imprisonment on Count Three concurrent with 180 months on Count One.

Moreover, Whitaker agreed that "had the matter gone to trial, the United States could have proven beyond a reasonable doubt that . . . [Whitaker] did distribute and cause to be distributed at least 25,000 40 mg OxyContin pills." (Statement of Facts ¶ 3.) It is therefore "beyond peradventure" that Whitaker would have been found guilty of distributing at least 25,000 pills had she gone to trial. See Meyer, 506 F.3d at 369.

As stated above, Whitaker gained a two-level reduction in Offense Level and the Government's promise to dismiss Count Two of the Indictment as a benefit of the Plea Agreement. (Plea Agreement ¶ 11.) This two-level reduction significantly reduced Whitaker's sentencing exposure. See USSG § 5A. Whitaker's sworn statements, coupled with the Government's evidence and the tangible benefits received by Whitaker, belies any reasonable probability that, but for counsel's deficient advice, Whitaker "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Thus, Whitaker fails to show prejudice resulting from counsel's advice that she accept the Statement of Facts and plead guilty to distributing at least 25,000 pills. Id. Consequently, Claim Two (a) will be dismissed.

### 2. Claim Two (b)

In Claim Two (b), Whitaker asserts that counsel deficiently failed to challenge the amount of pills specified in the Statement of Facts and the Plea Agreement. Whitaker states that "[d]uring the proffer a lower number amount was discussed . . . . The number was changed once the final plea was writ[t]en. Counsel did not object after I brought this to his attention." (§ 2255 Mot. 5.) Whitaker claims that counsel's conduct violated her rights under the Sixth Amendment.

Counsel concedes that a number lower than 25,000 pills may have been discussed "during negotiations." (Collins Aff.) Nevertheless, counsel avers that "[t]he Government[ ] could prove at least twenty five thousand pills, and [Whitaker] agreed to this when she entered her plea." (Id.) Again, no circumstances exist here that would lead the Court to consider Whitaker's prior sworn statements anything but conclusively established. Given her prior sworn statements (see Statement of Facts ¶ 13), Whitaker's claim that she did not distribute at least 25,000 OxyContin pills is palpably incredible. See Lemaster, 403 F.3d at 221. Accordingly, Whitaker cannot show deficiency or prejudice resulting from counsel's failure to make a baseless objection to the Plea Agreement. Hence, Claim Two (b) will be dismissed.

## C. Claim Three

In Claim Three, Whitaker states that "I ask [sic] my lawyer to withdraw my guilty plea about ninety (90) days into my court proceedings (bench trial) was placed on the courts [sic] docket. Counsel informed me that I was not allowed. This violated my 5th Amendment."[6] (Mem. Supp. § 2255 Mot. 2.) Whitaker's submissions make clear, however, that she agreed to proceed to sentencing without attempting to withdraw her plea. (Pet'r's Resp. 4.) Indeed, in her Reply, Whitaker's main concern is that the Government never offered to make a Rule 35 motion based on her cooperation.[7] Whitaker fails to articulate, in any document, how counsel's conduct violated the Fifth Amendment.

Though the United States Court of Appeals for the Fourth Circuit directs district courts to liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), this principle is not "without limits." Beaudett, 775

---

[6] Counsel states that "[t]here was never any discussion of withdrawing the plea that I recall." (Collins Aff.)

[7] Counsel, when asked by Whitaker if a Rule 35 motion was forthcoming, replied:

> Your problem is, [the Government] really [has not] been able to verify anything that you told them, so I would be surprised if they offer any reduction. Their feeling that you were counseling family about drug distribution while you were locked up further makes it difficult for them to help you.

(Pet'r's Reply Ex. 2.)

13

F.2d at 1278. "It does not require . . . courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments . . . ." Id.

Here, Whitaker allegedly asks counsel to withdraw her guilty plea, yet then proceeds to plead guilty and progress to sentencing. Whitaker's only explanation for this conduct is that she expected to receive a Rule 35 motion from the Government. Whitaker fails to allege any conduct on the part of counsel that implicates, much less violates, her Fifth Amendment rights. Accordingly, Claim Three will be dismissed.

### III. DISCOVERY MOTION

Whitaker moves this Court to compel the Pamunkey Regional Jail ("Jail") to produce "all recorded conversations during [Whitaker's] incarceration at the [Jail]." (Mot. Recover (Docket No. 50) 1 (emphasis omitted).) Whitaker avers she needs these recordings to show that her "lawyer (Christopher Collins) did not tell the truth on his Affidavit." (Id.) Rule 6(a) of the Rules Governing § 2255 Proceedings allows a judge to authorize discovery only for good cause. In this context, "good cause" cannot exist unless "'specific allegations before the

court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [or she] is . . . entitled to relief.'" United States v. Roane, 378 F.3d 382, 403 (4th Cir. 2004) (omission in original) (quoting Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)).

Whitaker's conclusory statement falls far short of a specific allegation that, if true, demonstrates she is entitled to relief. Whitaker fails to specify which statements in counsel's affidavit are untrue or how those false statements would entitle her to relief. Accordingly, Whitaker's Motion to Recover all Recorded Phone Conversations or Transcribed ("Motion to Recover") (Docket No. 50) will be denied.

## IV. CONCLUSION

Whitaker's Motion to Recover (Docket No. 50) will be denied. Whitaker's claims will be dismissed. Whitaker's § 2255 Motion (Docket No. 33) will be denied and the action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Whitaker fails to satisfy this requirement. Thus, a certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Whitaker and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: May 10, 2012
Richmond, Virginia

16